IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| W.G. YATES AND SONS CONSTRUCTION COMPANY, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. _____ ) |
| NASHVILLE MUSIC ROW HOTEL OWNER, LLC | ) ) ) |
| Defendant. | ) ) |

## VERIFIED COMPLAINT

Plaintiff W.G. Yates and Sons Construction Company ("Yates") brings this Complaint against Defendant Nashville Music Row Hotel Owner, LLC ("Owner") and states as follows:

**PARTIES**

1. Yates is a corporation organized under the laws of the State of Mississippi, and it maintains its principal place of business at 1 Gully Avenue, Philadelphia, Mississippi 39350.

2. Owner is a single-member, member-managed limited liability company organized under the laws of the State of Delaware, and it maintains its principal place of business at 5425 Wisconsin Ave, Suite 700, Chevy Chase, Maryland 20815. Owner may be served through its registered agent for service of process: Brooks Smith, 1600 Division St., Suite 700, Nashville, Tennessee 37203. Upon information and belief, the single member of Owner is not a citizen of the State of Tennessee.

1

## JURISDICTION AND VENUE

3. The Court has original subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332. The matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in the Middle District of Tennessee.

5. Venue is also proper in this Court pursuant to § 9.2 of the parties' contract because the project is located in Nashville, Tennessee.

## FACTS

6. Yates is one of the top providers of construction services in the country. Yates' services span general construction, design, engineering, and program management.

7. On January 11, 2017, Owner and Yates entered into a contract (the "Contract") for preconstruction and construction management of the Virgin-Nashville Hotel (the "Project"). The Contract includes, in relevant part, the Agreement and General Terms and Conditions (modified AIA A133 and modified A201), which are attached hereto as Exhibits A (Agreement) and B (General Terms and Conditions).

8. The Parties subsequently executed four (4) Guaranteed Maximum Price ("GMP") Amendments and thirteen (13) Change Orders (CO's), which are also part of the Contract.

9. Owner also issued eighteen (18) Construction Change Directives ("CCD's"), which are also part of the Contract.

10. In addition to the CO's and CCD's that were executed by Owner, there were numerous proposed change orders ("PCOs") submitted by Yates upon which Owner either failed to act or were improperly rejected, and which should properly be considered part of the Contract.

11. The Contract specifically addresses Owner's obligation to increase the GMP and/or adjust the Contract Time for the above-referenced changes.

12. Yates began performing preconstruction under the terms of the Contract on or around February 22, 2017, and in September 2017, Yates began construction of the Project.

13. Owner withheld five percent (5%) retainage from each of Yates' payment applications. Owner withheld retainage for the first time on payment made to Yates on October 10, 2017.

14. Owner was mandated by TENN. CODE ANN. §66-34-104 to place all retainage, beginning with the first withholding, into a separate, interest-bearing escrow account with a third party. The requirement cannot be waived; further it was memorialized in the Contract. Exhibit A § 7.1.8.

15. Pursuant to the Contract, Owner was required to purchase builder's risk insurance coverage for the Project and maintain that coverage in place until "final payment has been made as provided in Section 9.10 or until no person or entity other than the Owner has an insurable interest in the property . . . whichever is later." Exhibit B § 11.3.1.

16. Owner initially purchased builder's risk insurance ("Builder's Risk Insurance"), but it failed to maintain the coverage throughout the duration of the Project.

17. During the period the Project was covered by Builder's Risk Insurance, the Project experienced insured losses, which Yates and its trade partners remediated.

18. Insurer, Hanover Insurance Company ("Insurer") paid Owner, as fiduciary to Yates and the trade partners that performed the work, for certain damages associated with insured losses. Owner released the funds to Yates.

19. The Insurer withheld deductibles from the payment for each of the claims. Per the terms of the General Conditions of the Contract, the Owner shall pay the costs not covered because of deductibles (other than a max of $15,000.00 per occurrence in the event of Yates' negligence).

20. Owner has failed and refused to pay Yates the amounts not paid by the Insurer due to deductibles for certain insured claims.

21. On January 31, 2020, the Owner let the Builder's Risk Insurance lapse, and failed to procure equivalent replacement coverage for the remainder of the Project.

22. Owner also failed to inform Yates that it was letting the Builder's Risk Insurance lapse.

23. Additional losses occurred after Owner allowed the Builder's Risk Insurance to lapse. Each of the losses should have been covered by builder's risk insurance procured and maintained by the Owner.

24. For each loss, Yates performed additional work to repair the affected portion of the Project. Owner has failed and refused to pay Yates for certain costs that should have been covered by builder's risk insurance procured and maintained by the Owner.

25. On or about March 12, 2020, Governor Bill Lee declared a state of emergency for the State of Tennessee due to Covid-19 outbreak.

26. On July 1, 2020, the Virgin-Nashville Hotel opened to the public.

27. Yates performed work as directed via CCDs 13, 15, and 17. The CCDs were never converted to Change Orders. Despite completing that work, the Owner has failed and refused to pay Yates its costs associated with the CCD's.

28. The Parties negotiated Change Orders 14-16 in October 2020. The work had been completed previously, and the Owner was kept apprised of impacts, via the Potential Change Order ("PCO") documents and log. The Change Orders were finalized, but never signed. Owner has failed and refused to execute the Change Orders or to pay Yates for the work performed as documented in the CO's.

29. Yates performed certain changed work that was not included in a CCD or a CO. The Owner was kept apprised of impacts via the PCO documents and log. The Owner has benefitted from the work performed by Yates, but it continues to fail and refuse to pay Yates for work documented in the PCOs, all of which should properly be considered part of the Contract.

30. On September 25, 2020, having not been paid for the work it performed on the Project, Yates filed its Notice of Lien in with the Registrar of Deed for Davidson County, Tennessee. The original lien amount was $8,671,734.26. Yates subsequently amended the lien on October 22, 2020 and again on January 13, 2021, as response to receiving certain payments from the Owner. The current lien amount is $5,801,952.23. The original lien and all amendments are attached hereto as Exhibit C.

31. The lien amount is not inclusive of all amounts due and owing to Yates.

## CAUSES OF ACTION

### Count I

### BREACH OF CONTRACT

5
309175587.1
Case 3:21-cv-00199   Document 1   Filed 03/10/21   Page 5 of 13 PageID #: 5

**FAILURE TO PAY CONTRACT BALANCE**

32. Yates adopts and incorporates the allegations of paragraphs 1 – 31 as if fully set forth herein.

33. The Contract is a valid and enforceable agreement between Owner and Yates. The Contract provided that Yates would perform construction work and Owner would pay Yates for the work performed.

34. Yates performed its work as required by the Contract. Owner failed to pay for Yates' work in breach of the Contract.

35. As a result of Owner's breach, Yates has suffered damages for failure to pay contract balance.

**COUNT II**

**BREACH OF CONTRACT**

**FAILURE TO PAY FOR WORK PERFORMED PURSUANT TO CCDS**

36. Yates adopts and incorporates the allegations of paragraphs 1 – 35 as if fully set forth herein.

37. The Contract included a CCD provision under which the Owner could direct Yates to proceed with a change in the work while the Parties continued to discuss the impacts on the Project and negotiate the amount of additional time and compensation due to Yates as a result of the CCD.

38. Yates performed work as directed via CCDs 13, 15, and 17. Owner failed and/or refused to convert the CCDs to Change Orders, to finalize the additional time and/or compensation due to Yates for the additional work. Despite completing that work, the Owner

has failed and refused to pay Yates for even the undisputed costs associated with the CCDs, in breach of the Contract.

39. As a result of Owner's breach of contract, Yates has sustained damages. Yates is entitled to a change order to the GMP to cover all costs Yates has incurred as a result of the breaches described herein.

## COUNT III

## BREACH OF CONTRACT

## FAILURE TO PAY FOR CHANGE ORDER WORK

40. Yates adopts and incorporates the allegations of paragraphs 1 - 39 as if fully set forth herein.

41. The Parties negotiated Change Orders 14-16 in October 2020. The work had been completed previously, and Yates kept the Owner apprised of impacts, via the Potential Change Order ("PCO") documents and log. The Change Orders were finalized, but Owner failed and/or refused to execute the Change Orders in breach of the Contract.

42. Yates has sustained damages as a result of this breach of contract by Owner, as the work performed by Yates and accepted by Owner pursuant to these Change Orders. Yates is entitled to a change order to the GMP to cover all costs Yates has incurred as a result of the breaches described herein.

## COUNT IV

## BREACH OF CONTRACT

## FAILURE TO PAY FOR CHANGED WORK DOCUMENTED IN PCOS

43. Yates adopts and incorporates the allegations of paragraphs 1 – 42 as if fully set forth herein.

44. Yates performed certain changed work that was not included in a CCD or a CO. Yates submitted PCOs to the Owner for these changes in the work, but Owner failed and/or refused to approve the PCOs in breach of the Contract.

45. Yates has suffered damages as a result of these breaches of the Contract.

46. The Owner has benefitted from the work performed by Yates, but it continues to fail and refuse to pay Yates for work performed pursuant to and documented under the PCOs. Yates is entitled to a change order to the GMP to cover all costs Yates has incurred as a result of the breaches described herein.

**COUNT V**

**VIOLATION OF TENNESSEE STATUTE 66-34-104 AND BREACH OF CONTRACT**

**FAILURE TO MAINTAIN INTEREST-BEARING ESCROW ACCOUNT FOR RETAINAGE**

47. Yates adopts and incorporates the allegations of paragraphs 1 – 46 as if fully set forth herein.

48. Retainage was first withheld from Yates with payment of Application 2 on October 10, 2017.

49. On information and belief, Owner failed and/or refused to deposit the retainage withheld from each of Yates' payment applications in a separate, interest bearing, escrow account until it created an account on June 23, 2020.

50. Owner violated Tenn. Code Ann. §66-34-104 and breached the Contract when it failed and refused to open and maintain the escrow account, throughout the life of the Project.

51. As a result of Owner's failure to maintain the interest-bearing escrow account, Yates is entitled to recover a daily damage assessment of $300.00 from the first day that retainage was withheld and not escrowed until at least the date the escrow account was fully funded.

## COUNT VI

## BREACH OF CONTRACT

## FAILURE TO PAY DEDUCTIBLE AMOUNTS ASSOCIATED WITH BUILDER'S RISK CLAIMS AND FAILURE TO MAINTAIN BUILDER'S RISK INSURANCE

52. Yates adopts and incorporates the allegations of paragraphs 1 – 51 as if fully set forth herein.

53. Owner was contractually bound to pay all costs not covered because of deductibles associated with the Builder's Risk Insurance (other than a max of $15,000.00 per occurrence in the event of Yates' negligence).

54. Owner has failed and/or refused to pay Yates all costs it incurred to remedy the insured losses, which were not paid by the Insurer because of the existence of deductibles.

55. Owner was contractually bound to maintain the Builder's Risk Insurance until Yates received final payment or until only the Owner had an insurable interest in the Project.

56. Owner breached the Contract by allowing the Builder's Risk Insurance to lapse.

57. As a result of Owner's breaches, Yates has suffered, and continues to suffer, damages for which it is entitled to reimbursement from Owner for (a) costs not covered due to the existence of deductibles; and (b) costs incurred to remedy events that should have been, but were not, covered by Builder's Risk Insurance.

58. Yates is entitled to a change order to the GMP to cover all costs Yates has incurred as a result of the breaches described herein.

## COUNT VIII

## QUANTUM MERUIT

59. Yates adopts and incorporates the allegations of paragraphs 1 – 58 as if fully set forth herein.

60. Alternatively, Yates performed services and/or delivered materials for Owner, which was accepted by Owner. Owner accepted the services and/or materials and incorporated the them into the Project without compensating Yates. Owner accepted the services and/or materials and knew, or should have known, that Yates expected payment from Owner in exchange for the services and/or materials. Owner's conduct proximately caused Yates' damages.

## COUNT IX

## ISSUANCE OF WRIT OF ATTACHMENT AND FORECLOSURE OF LIEN

61. Yates adopts and incorporates the allegations of paragraphs 1 – 60 as if fully set forth herein.

62. Yates has a valid and enforceable lien on Owner's property.

63. Yates' lien has been recorded with the Davidson County, Tennessee Register of Deeds.

64. TENN. CODE ANN. § 66-11-126 provides that as the prime contractor under the Contract, Yates is entitled to enforce its lien through the issuance of a writ of attachment.

309175587.1

65. Yates has executed a bond payable to Owner in the amount of $1,000.00 in accordance with TENN. CODE ANN. § 66-11-126.

66. Accordingly, Yates is entitled to a writ of attachment for Owner's property described in more detail in Yates' Amended Lien.

67. Because Owner is indebted to Yates for the contractual balance payable as set forth above, Yates is entitled to foreclose its lien on the Project, to recover damages due and owing to Yates.

**PRAYER FOR RELIEF**

WHEREFORE, Yates requests:

68. A judgment for damages against Owner in an amount to be determined at trial, plus, pre-judgment and post-judgment interest, attorneys' fees, costs, and statutory damages;

69. Writ of attachment issue in favor of Yates against the property described in Yates' Amended Lien;

70. A judgment foreclosing Yates' lien against the Project; and

71. Such other and further relief to which it may be entitled.

Respectfully Submitted,

/s/ Jack R. Dodson III
Jack R. Dodson III (#27947)
Talor I. Bearman (#31969)
K&L GATES LLP
222 Second Avenue South
Suite 1700
Nashville, TN 37201
Telephone: (615) 780-6742
Facsimile: (615) 780-6799
Email: rob.dodson@klgates.com

309175587.1

Email: talor.bearman@klgates.com

*Counsel for Plaintiff W.G. Yates and Sons Construction Company*

## VERIFICATION

I, <u>Lawrence V. Dow</u>, hereby verify under penalty of perjury that the facts set forth in the foregoing Verified Complaint are true and correct to the best of my knowledge, information and belief.

Executed on: March 10, 2021

Signature: _/s/ Lawrence V. Dow_